UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DAMON ELLIOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 06-0240 (JDB)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **AGRICULTURE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

### DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

Defendant, the United States Department of Agriculture, pursuant to Fed. R. Civ. P. 56, moves for summary judgment because there are no material facts in dispute in this action under the Freedom of Information Act, 5 U.S.C. § 552, as amended, and defendant is entitled to judgment as a matter of law. In support of this motion, defendant respectfully refers the Court to the attached Memorandum of Points and Authorities. Pursuant to Local Rule 7(h), defendant also attaches hereto defendant's statement of material facts as to which there is no genuine issue and a proposed Order.

Plaintiff should take notice that any factual assertions contained in the accompanying affidavit and other attachments in support of defendant's motion will be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in defendant's attachments. See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992), Local Rule 7.1 and Fed. R. Civ. P. 56(e), which provides as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,

 /s/
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

 /s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

 /s/
CHARLOTTE A. ABEL, D.C. Bar # 388582
Assistant United States Attorney

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DAMON ELLIOTT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-0240 (JDB) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF AGRICULTURE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE UNITED STATES DEPARTMENT OF AGRICULTURE'S MOTION FOR SUMMARY JUDGMENT

### Introduction

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a, and pertains to the processing of Plaintiff's FOIA request by the United States Department of Agriculture ("USDA"). The attached declarations of Stasia Hutchison, FOIA and Privacy Act Officer in the Agriculture Research Service ("ARS"), USDA and Daniel L. Thessen, Physical Security Officer, Beltsville Area, Agriculture Research Service, USDA, describe the responses to Plaintiff's FOIA request.

### Factual and Procedural Background

On December 2, 2005, and December 29, 2005, ARS received FOIA requests from Damon Elliott dated November 27, 2005, and December 19, 2005, respectively, in which he requested a copy of the blueprints for all buildings within the Beltsville Agricultural Research Center (BARC), Beltsville, Maryland. See Declaration of Stasia M. Hutchison (Hutchison Decl.") ¶ 3 and Exhibit

A attached thereto. In addition, requests from plaintiff for the same information were forwarded to the ARS FOIA office Lisa Bynum, Real Property Section, ARS; Claudette Joyner, Real Property Section, ARS; Office of the Attorney General, Department of Housing and Community Development; and the Director, BARC. Id.

In response to these FOIA requests, on December 8, 2005, ARS sent an email to the Realty Specialist, Real Property Section, BARC, inquiring whether BARC maintains copies of blueprints for BARC buildings. Id. ¶ 4. By email dated December 8, 2005, the Realty Specialist responded that the building blueprints are archived at the Engineering and Construction Branch, BARC. Id. ¶ 5. By email dated December 28, 2005, the Realty Specialist provided a listing of architectural drawings on file at the Engineering and Construction Branch, BARC. Id. ¶ 6.

On December 29, 2005, ARS responded to Damon Elliott's FOIA requests. Id. ¶ 7. The ARS informed plaintiff that the agency maintains blueprints for 375 buildings within BARC. Id. The ARS informed plaintiff that his request for records was being denied in full. Id. The blueprints were withheld pursuant to 5 U.S.C. 552 (b)(2) which protects sensitive critical infrastructure information related to security and safety. Id. Plaintiff was informed how he could appeal the decision to withhold the blueprints for BARC buildings. Id.

On January 23, 2006, ARS received a letter dated January 4, 2006, from plaintiff appealing the denial of information regarding the blueprints for all buildings constructed within the BARC. Id. ¶ 8. In his letter, plaintiff contends that the search for the blueprints of all buildings within BARC was not adequate and the agency's response was in error. Id.

On February 8, 2006, the ARS responded to Mr. Elliott's appeal dated January 4, 2006, and stated that agency employees had searched their files for the blueprints for buildings within BARC,

2

and located blueprints for 375 buildings. Id. ¶ 9. The ARS explained that the request for these records was being denied because blueprints for federal buildings are exempt from disclosure pursuant to 5 U.S.C. 552 (b)(2), which protects sensitive critical infrastructure information related to security and safety. Id.

Plaintiff submitted additional FOIA requests specifically requesting the blueprints for Building 022, BARC, Beltsville, Maryland. Id. ¶ 10. On December 19, 2005, the ARS received a FOIA request dated December 12, 2005, addressed to the National Agricultural Library from plaintiff in which he requested a copy of the blueprints for Building 022, BARC. Id. In addition, requests from Damon Elliott for the same information were forwarded to the ARS FOIA office from Lisa Bynum, Real Property Section, ARS, and Andrea Fowler, Department FOIA Officer. Id. In response to these FOIA requests, sent on December 22, 2005, the ARS sent an email to the Realty Specialist, Real Property Section, BARC, inquiring whether BARC maintains copies of blueprints for Building 022, BARC. Id. ¶ 11.

By email dated December 28, 2005, the Realty Specialist stated that there were no drawings (including blueprints) for Residence 022 (Building 022) available. Id. ¶ 12. The files maintained by the Real Property Section and the Engineering and Construction Branch were searched. Id. On December 29, 2005, the ARS responded to plaintiff's FOIA requests. Id. ¶ 13. They informed Damon Elliott that the agency searched its files for the blueprints for Building 022, BARC; however, the agency was unable to locate any such records. Id. Plaintiff was provided with a 'no records' response along with information about how to appeal the response. Id.

On January 23, 2006, the ARS received a letter dated January 9, 2006, from plaintiff appealing the 'no records' determination regarding blueprints for Building 022, BARC. Id. ¶ 14.

3

In his letter, plaintiff contends that the search conducted was not adequate and the response was in error. Id. In response to the appeal, the ARS FOIA office again contacted the Realty Specialist, Real Property Section. Id. ¶ 15. The files maintained by the Real Property Section and the Engineering and Construction Branch, BARC, were searched and no blueprints were located for Building 022, BARC. Id.

Plaintiff's judicial complaint is stamped "RECEIVED, Jan 23, 2006, Nancy Mayer Whittington, Clerk, U.S. District Court." Id. ¶ 16. The judicial complaint is stamped "FILED, Feb 10, 2006, Nancy Mayer Whittington, Clerk, U.S. District Court." Id. ¶ 17.

On March 1, 2006, Antoinette Betschart, Acting Administrator, ARS, upheld the 'no records' determination. Id. ¶ 18. The letter provides that the Real Property Section and the Engineering and Construction Branch, BARC, conducted searches of their records and were unable to locate any blueprints for Building 022, BARC, Beltsville, Maryland. Id. In early September, the files in the Real Property Section and the Engineering and Construction Branch, BARC, were searched again and no blueprints were located for Building 022. Id.

## ARGUMENT

### I.     Defendant Is Entitled to Summary Judgment

#### A.     Standard for Summary Judgment.

FOIA cases are typically decided on motions for summary judgment. See Cappabianca v. Commissioner, United States Customers Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary

4

judgment") (citing <u>Miscavige v. IRS</u>, 2 F.3d 366, 368 (11th Cir. 1993)).[1] To be entitled to summary judgment, the agency must prove that each document was produced, not withheld, is unidentifiable, or is exempt from disclosure. <u>Weisberg v. United States Dept. of Justice</u>, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, the defendant may rely on affidavits or declarations and other evidence by the agency which show that the documents are exempt from disclosure. <u>Hayden v. National Security Agency Cent. Sec. Serv.</u>, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), <u>cert. denied</u>, 446 U.S. 937 (1980); <u>Church of Scientology v. United States Department of Army</u>, 611 F.2d 738, 742 (9th Cir. 1980). Summary judgment may be granted solely on the basis of agency affidavits [or declarations] if they "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish that the documents are within the FOIA exemption category; the district court need look no further." <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d at 1329; <u>Bowen v. FDA</u>, 925 F.2d 1224, 1227 (9th Cir. 1991). <u>See also</u> <u>Hayden</u>, <u>supra</u>, 608 F.2d at 1387; <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981).

These declarations or affidavits (singly or collectively) are often referred to as a <u>Vaughn</u> index, after the case of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977, 94 S.Ct. 1564 (1974).[2] There is no set formula for a <u>Vaughn</u> index. It is the content, not the form

---

[1]    For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to <u>de novo</u> review by the courts. <u>Hayden v. National Security Agency/Cent. Sec. Serv.</u>, 608 F.2d 1381, 1384 (D.C. Cir. 1979), <u>cert. denied</u>, 446 U.S. 937 (1980).

[2]    "A <u>Vaughn</u> index must: (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption." <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d at 1326. "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979).

which is important. "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. United States Department of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Department of Justice, 844 F.2d 126, 129 (3d Cir. 1988).[3]

Defendant's declarations were prepared by Stasia M. Hutchison Freedom of Information and Privacy Act Officer in the ARS, USDA and Daniel Thessen, Physical Security Officer, Beltsville Area, ASR, USDA.

"Summary judgement is available to the defendant in a FOIA case, when the agency proves that it has fully discharged its obligations under FOIA." Miller v. United States Dept. of State, 779 F.2d 1378, 1382 (8th Cir. 1985.) Agencies establish that all of their obligations under the FOIA have been met through declarations and Vaughn indexes. Thus, when the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant. Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

**B.    Defendant Has Performed An Adequate Search For Responsive Records, And Has Justified All Withholding Under Appropriate FOIA Exemptions.**

Where a FOIA plaintiff challenges the adequacy of an agency's search in response to a

---

[3]    "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Id. "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted." Information Acquisition Corp. v. Dept. of Justice, 444 F.Supp. 458, 462 (D.D.C. 1978).

Freedom of Information Act request, the agency's burden is to establish that it has conducted a search reasonably calculated to uncover all responsive records. Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The issue is not whether there might possibly exist other records responsive to the request, but whether the search for responsive records was reasonable. Id. The agency can establish the reasonableness of its search by affidavit if it is relatively detailed, non-conclusory, and made in good faith. Weisberg, 745 F.2d at 1485. Summary judgment is appropriate where the agency submits a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched", unless "a review of the record raises substantial doubt" about the adequacy of the search. Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999), quoting Oglesby v. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

The FOIA does not require that an agency search every division or field office in response to a FOIA request when responsive documents are likely to be located in one place. Marks v. Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978). "When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.'" Campbell v. U.S. Dept. of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998), quoting Oglesby, 920 F.2d at 68. "The agency is not required to speculate about potential leads" to the location of responsive documents, Kowalczyk v. Dep't of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996), although it is required "to follow through on obvious leads to discover requested documents." Valencia-Lucena, 180 F.3d at 325.

Here the detailed declarations provided by the ARS demonstrate that the agency's search for records was reasonable, and therefore, was adequate. Hutchison declar. ¶¶ 4-13, 18. Supp. Declar. of Daniel L. Thessen, ¶ 2. The agency searched for records requested by the plaintiff and located 375 records. The agency twice searched for blueprints specifically for building 022 but was unable to locate this record.[4] Id. The agency followed the obvious leads to locate responsive documents. This is all that the law requires.

### C. The USDA Has Justified its Invocation of Freedom of Information Act Exemptions.

### 1)  5 U.S.C. 552(b)(2) [Internal Agency Rules and Practices]

Title 5, United States Code, Section 552 (b)(2) (hereinafter Exemption 2) exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. Department of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); National Treasury Employees Union v. United States Custom Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981). Depending upon the nature of the information, documents will fall within either the "high (b)(2) category" or the "low (b)(2) category."

"High (b)(2)" exempts from mandatory disclosure documents relating to more substantive

---

[4] Even if the agency had located this blueprint, as set forth below, it would have withheld it. Accordingly, the adequacy of the agency's search with respect to this one document, is irrelevant.

internal matters. See Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Withholding is permitted in this category to the extent that disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, id., would disclose guidelines for law enforcement investigations, or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities. See Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051 (D.C. Cir. 1981) (en banc); Hardy v. ATF, 631 F.2d 653, 656 (9th Cir. 1980).

"High (b)(2)," information must satisfy a two-pronged test. First, the information must be "predominately internal." Second, the disclosure of the information must "significantly risk circumvention of agency regulations or statutes." Crooker, 670 F.2d at 1074. This analysis need not address the public interest which may exist in the disclosure of such information, since the public interest is legally irrelevant under the anti-circumvention aspect of Exemption 2[5]. Voinche v. FBI, 940 F. Supp. 323, 328 (D.D.C. 1996), aff'd per curiam, No. 96-5304 (D.C. Cir. June 19, 1997); Institute for Policy Studies v. Department of the Air Force, 676 F. Supp. 3, 5 (D.D.C. 1987).

Deference has been accorded law enforcement matters under Exemption 2. Courts have interpreted this to apply to a wide range of information, including permitting the withholding of general guidelines for conducting investigations, PHE, Inc. v. Dept. of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993); guidelines for conducting post-investigation litigation, Schiller v. NLRB, 964 F.2d at 1207; a training manual with information pertaining to surveillance techniques, Crooker, 670 F.2d at 1073; criteria for prison gang member classification, Jimenez v. FBI, 938 F. Supp. 21, 27 (D.D.C. 1996); and DEA's drug violator codes, Albuquerque Publishing Co. v. Department of Justice, 726

---

[5]    The public interest aspect is irrelevant in the Crooker analysis for the simple fact that a "FOIA disclosure should not 'benefit those attempting to violate the law and avoid detection.'" Voinche, 940 F.Supp. at 328 (quoting Crooker, 670 F.2d at 1053).

F. Supp. 851, 854 (D.D.C. 1989).

Exemption 2 may be applied to prevent potential circumvention through a "mosaic" approach-- information which would not by itself reveal sensitive law enforcement information can nonetheless be protected to prevent damage that could be caused by the assembly of different pieces of similar information by a requester. See Dorsett v. United States Dep't of the Treasury, (concluding that certain Secret Service information, the disclosure of which in isolation would be "relatively harmless," could "in the aggregate " benefit those attempting to violate the law).

Since the horrific events of September 11, 2001, and given the possibilities for further terrorist activity in their aftermath, all federal agencies are concerned with the need to protect critical systems facilities, stockpiles, and other assets (often referred to as "critical infrastructure") from security breaches and harm. See FOIA Post, "Executive Order on National Security Classification Amended" (posted 4/11/03) (noting coverage of "information that reveals current vulnerabilities of systems, installations, infrastructures, or projects relating to national security," in new section 3.3.(b)(8)" of Executive Order 12, 958, as amended).

In this case the documents are blueprints for federal buildings and are exempt from disclosure pursuant to 5 U.S.C. 552 (b)(2), which protects sensitive critical infrastructure information related to security and safety. The ARS is the USDA's chief scientific research agency. See Declaration of Daniel L. Thessen, ("Thessen Decl.") ¶ 2. and Exhibit B attached thereto. Its purpose is finding solutions to agriculture problems that affect Americans every day, from field to table. Id. The ARS conducts research to develop and transfer solutions to agricultural problems of high national priority and provide information access and dissemination to ensure high-quality, safe food, and other agricultural products; assess the nutritional needs of Americans; sustain a competitive agricultural

10

economy; enhance the natural resource base and the environment; and provide economic opportunities for rural citizens, communities, and society as a whole. Id  The Beltsville Area consists of ARS programs at the Beltsvile Agricultural Research Center in Beltsville, Maryland; the United States National Arboretum in Washington, DC; and worksites in Chatsworth, New Jersey, Presque Isle, Maine and McMinnville, Tennessee. Id  BARC is the largest and most diversified agricultural research complex in the world. Id.  Releasing blueprints of buildings at BARC would render BARC vulnerable to potential threats and unnecessary risk in maintaining physical security over the research programs and critical infrastructure assets at BARC. Id.

Many of the assets of the BARC require continuous security protection.  These are wastewater treatment plants, power transfer stations, water distribution stations, and registered Select Agents, which are designated for special protection  under the "Public Health Security and Bioterrorism Preparedness and Response Act of 2002", (Pub. L., 107-188) which was signed into law on June 12, 2002. Title II of this law, "Enhancing Controls on Dangerous Biologicals and Toxins" provides for the regulation of certain biological agents and toxins designated  "Select Agents" by HHS and USDA. Id.  The framework for the regulation of these agents is the Public Health Service regulation 42 CFR Part 72, which defines the original 36 Select Agents and promulgates requirements for their packaging and  shipment. Id.  A final rule for USDA was published in the Federal Register, Volume 70, Number 52 on March 18, 2005 (7 CFR Part 331 and 9 CFR Part 121). Id.  Both of these documents set forth the requirements to ensure the safe handling of such agents or toxins, and to protect against  the use of such agents or toxins in  domestic or international terrorism or for any other criminal purpose.  Id

11

The Select Agents stored in mission critical areas at BARC are Government regulated pathogens or toxins, that, in the wrong hands, particularly coupled with other sensitive information such as knowledge of a reasonably specific location of a Select Agent, could be destructive to the natural environment and to the public health, the local or national economy, and potentially could be used for biological terrorism. Id. BARC is conducting extensive research on some of these Select Agents. Id. Protection of these agents from release or theft by intruders is a very high national security priority. If such intruders possessed blueprints of the buildings at BARC, possibly coupled with other sensitive information such as knowledge of a reasonably specific location of a Select Agent, they could plan attempts to steal or release these agents with greater likelihood of success and protection of these agents would be much more difficult. Id.

The wastewater treatment plants, water distribution stations and power transfer stations have been deemed by the ARS as critical infrastructure that mandate continuous physical security protection. All of these facilities are in BARC buildings, and risk mitigation strategies of these facilities would be more difficult if blueprints of these buildings were turned over to any outside party. Id

This critical infrastructure protection is directed pursuant to Homeland Security Presidential Directive/HSPD-7, published by the White House on December 17, 2003. Id. This directive establishes a national policy for federal departments and agencies to identify and prioritize United States critical infrastructure and key resources and to protect them from terrorist attacks. Id. Paragraph (8) of Homeland Security Presidential Directive/HSPD-7, "Critical Infrastructure, Identification, Prioritization, and Protection", provides that:

> Federal departments and agencies will identify, prioritize, and coordinate the protection of critical infrastructure and key resources in order to prevent, deter, and mitigate the effects of deliberate efforts to destroy, incapacitate, or exploit them. Federal departments and agencies will work with State and local governments and the private sector to accomplish this

12

objective.

Further, Paragraph (10) of Homeland Security Presidential Directive/HSPD-7, provides that:

> Federal departments and agencies will appropriately protect information associated with carrying out this directive, including handling voluntarily provided information and information that would facilitate terrorist targeting of critical infrastructure and key resources consistent with Homeland Security Act of 2002 and other applicable legal authorities.

Further, BARC has several buildings and structures that house chemicals licensed and registered under the Federal Insecticide, Fungicide, and Rodenticide Act; the Resource Conservation and Recovery Act; the Occupational Safety and Health Act; and 10 CFR 20.1801-1802 as dangerous radiological materials; pesticides; and insecticides that are used daily in the various research and farming projects. Id. The threat or release into the environment of these substances by intruders would have a much greater chance of success if the intruders had access to building blueprints, or had access to building blueprints along with access to other sensitive facilities information. Id

In addition to the Select Agents discussed above, there are also several research programs at BARC that conduct research on a variety of moderate risk pathogens that require Bio Safety Level 2 facilities, security and work practices. Id. A Bio Safety Level 2, as defined by the Centers for Disease Control, is a facility that conducts work involving agents of moderate potential hazard to personnel and the environment. Id. These Bio Safety Level 2 laboratories require extensive electronic and physical security systems to provide acceptable levels of protection against theft or other forms of infiltration. Id. Those systems could be compromised more easily by intruders if those intruders possessed blueprints of the buildings, coupled with other sensitive information relative to buildings in which these pathogens are kept. Id.

Narcotics research is also prevalent at BARC, with specific research programs on cannabis and the coca plant. Id. These research programs are conducted under permit through the Drug

Enforcement Administration ("DEA") and require additional means of physical protection for these substances specific to DEA controlled substance policies and guidelines. Id. Those means could be compromised more easily by intruders if those intruders possessed blueprints of the buildings in which these substances are kept, or if possession of these blueprints were coupled with other sensitive information relative to where these substances are kept. Id

Lastly, there are several computer network server and switch locations throughout BARC that also require a high level of physical security. Id. This equipment could be compromised more easily by intruders if those intruders possessed blueprints of the buildings in which this equipment is kept. Id. In some instances, the location of computer and telecommunication rooms do appear on the blueprints that plaintiff has asked for. Id.

In summary, general physical security and specific asset protection strategies prepared in accordance with the Department of Justice's report titled, "Vulnerability Assessment of Federal Facilities" of June 28, 1995, such as perimeter security; entry security for access of people, packages, and mail into a building; interior security for prevention of criminal or terrorist activities inside the facility; and security planning, would be compromised if building blueprints were turned over to any outside party, or if these blueprints were coupled with other sensitive information relative to the facility. All of the assets noted in Mr. Thessen's declaration are located throughout BARC in several different locations, based on ongoing research needs and requirements. The specific locations where these assets are located are security sensitive to USDA and ARS and location confidentiality must be maintained at all times. As set out above, that location confidentiality would be compromised by release of BARC blueprints, either explicitly by those blueprints that show asset locations, or implicitly by use of the blueprints in combination with other information about the BARC facility.

In a FOIA case, the specific requester's need for the documents is irrelevant. N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 144 (1975); Tax Analysts v. United States Dep't of Justice, 965 F.2d 1092, 1095 (D.C. Cir. 1992). Undoubtedly, plaintiff will claim he needs the blueprints for a benign purpose. However, because his stated purpose is irrelevant under FOIA, his request must be treated exactly the same as a request from someone who seeks the blueprints for a malevolent purpose.

2)    **Portions of Blueprints Cannot Meaningfully Be Segregated And Release of Portions Of Blueprints Would Lead to the Disclosure Of The Information Sought To Be Protected**

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); *Mead Data Cent., Inc. v. United States Dept. of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue *sua sponte*." *Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements". *Mead Data*, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. *Id.* All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even

15

sentences which taken separately or together have minimal or no information content." *Mead Data*, 566 F.2d at 261, n.55.

In this case, the declarations of Mr. Thessen provides "detailed justification" for the exemption claimed. Mr. Thessen explains how disclosure of the blueprints, alone or in combination with other sensitive information, could potentially lead to security breaches. Disclosure of even portions of the blueprints could potentially lead to security breaches. Supp. Declar. of Daniel L. Thessen. If a blueprint were released in redacted form, the redaction itself would identify a sensitive location, which is the very information the agency seeks to protect. Id. at ¶ 3. Similarly, if defendant produced some blueprints, and not other blueprints, it would result in disclosure of the very information sought to be protected because the recipient of the blueprints would be able to identify which facilities are sensitive and which are not, and which facilities are more secure than others. Id.

### 3)   The Plaintiff Has Failed To Exhaust His Administrative Remedies

The plaintiff filed several initial FOIA requests for the blueprints of all buildings at BARC. The ARS FOIA office received one on December 2, 2005, and another on December 29, 2005. Other requests for the same records were sent to other USDA offices and forwarded to the ARS FOIA office. Hutchison Declaration ("HD"), Para. 3-5. The ARS searched and found blueprints for 375 of the buildings at BARC. HD, Para. 7. The ARS FOIA office on December 29, 2005, made an initial reply to these FOIA requests. That reply was a complete denial based on Exemption 2 of the FOIA, 5 U.S.C. 552(b)(2). HD, Para. 7. That provision of the FOIA exempts from mandatory disclosure records which are related to the internal rules and practices of an agency and the release of which would risk circumvention of the law. See argument above on Exemption 2.

The plaintiff made an appeal from this withholding. That appeal letter was dated January 4, 2006. HD, Para. 8. The ARS FOIA office received that appeal on January 23, 2006. HD, Para. 8.

16

Also on January 23, 2006, the judicial complaint in this civil action was received by the Clerk of the United States District Court for the District of Columbia. HD, Para. 16. The plaintiff provided additional information to seek *in forma pauperis* status. That request was taken under consideration by the court but was not decided immediately.

On February 8, 2006, the ARS replied to the appeal letter dated January 4, 2006. The reply emphasized that blueprints for some buildings at BARC had been found but that they were exempt from disclosure pursuant to 5 U.S.C. 552(b)(2). HD, Para. 9.

By order dated February 10, 2006, the court granted the plaintiff's motion to proceed *in forma pauperis.* The judicial complaint was stamped "Filed" on February 10, 2006, and the summons was issued on that date. HD, Para. 18.

The plaintiff has failed to exhaust administrative remedies in this civil action because the agency made an initial reply to his initial request, but he did not file an administrative appeal and then wait 20 work days for the agency to reply to that administrative appeal. If an agency makes an initial reply to an initial FOIA request, the requester must administratively appeal the initial reply and then wait 20 work days for the agency to respond. Oglesby v. Department of the Army, 920 F.2d 57 (D.C. Cir. 1990).

The plaintiff did not do that here. The agency reply to the plaintiff's initial request was on December 29, 2005. The plaintiff appealed that request by letter dated January 4, 2006, but that letter was not received until January 23, 2006. Therefore, the plaintiff's appeal is considered to have been made on January 23, 2006, and the 20 work day period does not begin to run until that day. 5 U.S.C. 552(a)(6)(A)(ii); 7 C.F.R. 1.14( c ).

The plaintiff was then required to wait 20 work days from January 23, 2006, i.e., until February 22, 2006, before filing a civil action. Oglelsby, supra. He did not wait the entire period

17

of 20 work days. If the suit is considered to have been filed when it was received by the court on January 23, 2006, the plaintiff did not wait any number of work days, and so has failed to exhaust administrative remedies. If the suit is considered to have been "filed" on February 10, 2006, the date the judicial complaint was stamped as filed and the summons was issued, then the plaintiff only waited 14 work days, which is insufficient. Oglesby, supra. Under either analysis, the plaintiff has failed to exhaust administrative remedies and the civil action must be dismissed. McDonnell v. United States, 4 F.3d 1227 (3d Cir. 1993); Oglesby, supra.

Thus, because at the time of the filing of the Complaint administrative remedies were not exhausted, this case must be dismissed regardless of subsequent events. Judicial Watch, Inc. v. FBI, No. 01-1216, slip op. At 8 (D.D.C. July 26, 2002)(citing Judicial Watch, Inc. v. United States Dep't of Justice, No. 97-2089, slip op. at 11 (D.D.C. July 14, 1998)(citing in turn, Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989)("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.")

For the reason set out above, this civil action must be dismissed for failure to exhaust administrative remedies.

## CONCLUSION

The defendant has demonstrated that the USDA properly responded to Plaintiff's FOIA request and that no information was improperly withheld. Accordingly, the Court should grant defendant's motion for summary judgment.

Respectfully submitted,


_/s/_

KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

18

_/s/_ _____

RUDOLH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_/s/_ _____

CHARLOTTE A. ABEL, D.C. Bar # 388582
Assistant United States Attorney
555 Fourth Street, N.W., Tenth Floor
Washington, D.C. 20530
(202) 307-2332

JAMES PAXTON
Paralegal Specialist

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Defendant's Motion for

Summary Judgment has been made by first-class mail delivery to:

> DAMON ELLIOTT
> R31034-037
> Coleman United States Penitentiary
> Federal Correctional Complex
> P.O. Box 1034
> Coleman, FL 33521-0879

on this 27th day of September 2006.

                                    /s/
                                    CHARLOTTE A. ABEL
                                    Assistant United States Attorney