# Third Declaration of Daniel L. Thessen
# 13 August 2007

Declaration of Daniel L. Thessen

1.     I, Daniel L. Thessen, am the Beltsville Area (Area) Physical Security Officer, Agricultural Research Service (ARS), United States Department of Agriculture. My work address is 10300 Baltimore Avenue, Building 003, Room 325, Beltsville Agricultural Research Center (BARC), Beltsville, Maryland 20705. I have been employed in this position since August 2002.

2.     As the Physical Security Officer for the Area, I am directly responsible for the physical protection and security of all government assets at BARC. I provide direct security support and assistance to the myriad scientific research programs that are conducted at BARC, with particular emphasis focused on the protection of the nation's food supply (mandated under Homeland Security Presidential Directive-9 "Defense of United States Agriculture and Food").

3.     As a physical security expert, I have worked for 22 years in the security field as a regional manager, director and field operative in both the private and public sectors. I possess extensive knowledge and experience in contract guard service, personal protection, facility protection and security and vulnerability assessments. In my professional judgment, I am convinced that releasing blueprints of all buildings at BARC would render BARC vulnerable to potential threats and unnecessary risk in maintaining physical security over the research programs and critical infrastructure assets at BARC. BARC comprises nearly 6800 acres of land, with a vast majority of the property having no fence line to delineate public/private property boundaries. This lack of a continuous fence line lends to the vulnerability of several building structures easily accessible by a

1

potential intruder. Further, there are several miles of state and county roadways within BARC property limits that expose critical scientific research areas to casual passersby. Because BARC property boundaries are not wholly fenced in, creating a contiguous and secure perimeter boundary is not possible. There is literally hundreds of perimeter ingress points that could be utilized by a potential hostile intruder to access sensitive areas or structures within BARC.

4. Many security-sensitive assets at BARC require continuous security protection pursuant to specific government regulations or directives. BARC possesses wastewater treatment plants, power transfer stations, water and natural gas distribution stations and lines, all of which are designated for special protection under the "Public Health Security and Bioterrorism Preparedness and Response Act of 2002", (Pub. L., 107-188) which was signed into law on June 12, 2002. Title II of this law, "Enhancing Controls on Dangerous Biologicals and Toxins" provides for the regulation of certain biological agents and toxins designated "Select Agents" by the Department of Health and Human Services and the USDA. The framework for the protection of these agents is the Public Health Service regulation 42 CFR Part 72, which defines the original 36 Select Agents and promulgates requirements for their manipulation, security, packaging and shipment. A final rule for a supplemental USDA regulation for the protection of these agents by USDA agencies was published in the Federal Register, Volume 70, Number 52 on March 18, 2005 (7 CFR Part 331 and 9 CFR Part 121). Both of these documents set forth the requirements to ensure the safe handling of such agents or toxins, and to protect against the use of such agents or toxins in domestic or international terrorism or for any other criminal intent or purpose.

2

The Select Agents stored in mission critical areas at BARC are Government regulated (7 CFR Part 331 and 9 CFR Part 121) pathogens or toxins, that, in the wrong hands, could be destructive to the natural environment and to the public health, the local or national economy, and potentially could be used for biological terrorism. BARC is conducting extensive research on some of these Select Agents. Protection of these agents from release or theft by potential intruders is a very high national security priority. If such intruders possessed blueprints of the buildings at BARC, possibly coupled with other sensitive information such as knowledge of a reasonably specific location of a Select Agent, they could plan attempts to steal or release these agents with greater likelihood of success and protection of these agents would be much more difficult. A factor which elevates the likelihood of an intruder gaining illicit access to BARC buildings if in possession of building blueprints is the fact that a predominant majority of the BARC site does not have a perimeter fence in place, which could allow an intruder free access right up to the outer walls of a building that may contain regulated pathogens or critical infrastructure requiring special security measures.

The wastewater treatment plants, water distribution stations and power transfer stations have been identified by ARS as critical infrastructure that mandates continuous physical security protection. This critical infrastructure protection requirement is a result of Homeland Security Presidential Directive/HSPD-7, published by the White House on December 17, 2003. This directive establishes a national policy for Federal departments and agencies to identify and prioritize United States critical infrastructure and key resources and to protect them from terrorist attacks. All of these facilities are in BARC buildings or sensitive areas, and risk mitigation strategies of these facilities would be

more difficult if blueprints of these buildings were turned over to any outside party. A hostile intruder with BARC building blueprints in hand, along with sensitive information such as knowledge of a reasonably specific location of this critical infrastructure, coupled with unrestricted public access to BARC on the majority of the property, could commit criminal acts against this critical infrastructure with a greater likelihood of success, and protection of this critical infrastructure against such an intruder would be very difficult.

5. Further, BARC must remain in compliance with Homeland Security Presidential Directive/HSPD-9, "Defense of the United States Agriculture and Food", released by the White House on January 30, 2004. This directive establishes a national policy to defend the agriculture and food system against terrorist attacks, major disasters, and other emergencies. The directive requires that the Federal government provide the best protection possible against a successful attack on the United States agriculture and food system, which could have catastrophic health and economic effects. Much of the research information collected at BARC relative to the protection of the nation's food supply could be stolen by potential intruders that would have a much greater chance of success if they had access to building blueprints, or had access to building blueprints along with other sensitive facilities information. This additional facilities information could be fairly easily obtained or confirmed with the fact that a majority of BARC property does not have an established perimeter fence line, thereby allowing generally unrestricted public access up to the actual outer walls of many structures at BARC.

6. Narcotics research is also a prevalent research program at BARC, with specific research programs on cannabis and the coca plant. These research programs are

4

conducted under permit through the Drug Enforcement Administration and require additional means of physical protection for these narcotic substances. The narcotic research conducted at BARC is governed by regulations promulgated under 21 USC 821. These regulations set out a protective strategy for controlled substances, including narcotics. This protective strategy could be compromised more easily by intruders if those intruders possessed blueprints of the buildings in which these substances are kept, or if possession of the blueprints were coupled with other sensitive information relative to where these substances are kept. For example, someone possessing BARC building blueprints would be able to determine where cannabis is grown and researched outdoors, and possibly compromise the location and protection scheme used to protect the cannabis crop.

7. Further, BARC has several buildings and structures that house chemicals licensed and registered under the Federal Insecticide, Fungicide, and Rodenticide Act; the Resource Conservation and Recovery Act; and the Occupational Safety and Health Act. These chemicals are used in field and plant research for invasive weed and insect control. Many of these buildings and structures that contain these chemicals are located at various research fields on the BARC site, and are identified by signage that reflects the building is a storage location for chemicals. A potential intruder in possession of BARC building blueprints, coupled with other sensitive facilities information, would have a much greater chance of successful illicit or illegal activity. This additional facilities information could be fairly easily obtained or confirmed with the fact that a majority of BARC property does not have an established perimeter fence line, thereby allowing generally unrestricted

public access up to the outer walls of many of the chemical storage buildings and structures located on the BARC site.

8. In addition, BARC houses a low-level irradiator used in animal research. This irradiator is now subject to increased security controls promulgated by Nuclear Regulatory Commission regulations at 10 CFR 20.1801 and 10 CFR 20.1802. The physical security of this irradiator is a high national priority because the radioisotopes in this irradiator could be used as radiological agents for terrorism. The irradiator's protection could be compromised by intruders in possession of building blueprints, particularly if the intruders had access to building blueprints along with access to other sensitive facilities information, such as knowledge of the reasonably specific location of the irradiator.

9. Lastly, there are several computer network server and router locations throughout BARC that also require a high level of security. Much of the information relative to Select Agents, critical infrastructure, narcotics research, and other security sensitive research information and data is stored on BARC's network. This equipment could be compromised more easily by intruders if those intruders possessed blueprints of the buildings in which this equipment is kept. In some instances, the location of computer and telecommunications rooms do appear on the blueprints that Damon Elliott has asked for.

10. The general physical security and specific asset protection strategies prepared in accordance with the Department of Justice's report titled, "Vulnerability Assessment of Federal Facilities" of June 28, 1995. They address perimeter security;

6

entry security for access of people, packages, and mail into a building; interior security for prevention of criminal or terrorist activities inside the facility; and security planning, and would be compromised if building blueprints were turned over to any outside party, especially if these blueprints were coupled with other sensitive information relative to the facility, such as the location of BARC assets such as dangerous biological agents and sensitive equipment.

11. The statutes and regulations that provide for the security and protection of BARC assets are those statutes and regulations cited specifically in Paragraphs 4-8, 10 above.

12. The release of the BARC blueprints at issue would risk circumvention of these statutes and regulations. The connections between the release of the blueprints and the risk of circumvention of these statutes and regulations are the dangers of release set out in Paragraphs 4-10 above. The most concise summary of these connections is the commonsense and practical consideration that if hostile intruders intend to enter buildings where BARC assets are stored to either release or steal these assets, the intruders will be more likely to succeed if they have the blueprints of their target buildings and can plan their intrusion more intelligently and effectively.

13. Further, withholding of all the blueprints is needed to give maximum protection to BARC assets. All of these assets and research materials noted in this declaration are located throughout BARC in several different locations, based on ongoing research needs and requirements. The specific locations where these materials and

substances are stored and maintained are security sensitive to USDA and ARS, and location confidentiality must be maintained at all times. That location confidentiality would be compromised by release of the blueprints, either explicitly by the release of those blueprints that show asset locations, or implicitly by the release of only those blueprints that do not show asset locations. This compromise of location confidentiality, either explicit and implicit, would risk circumvention of the statutes and regulations referenced above that provide for the protection of BARC assets because it would allow potential intruders to know the buildings in which their targets were stored, and focus their efforts on those buildings.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on 13 August 2007. 28 U.S.C. 1746

_____
Daniel L. Thessen
Physical Security Officer
Beltsville Area
Agricultural Research Service
United States Department of Agriculture
Beltsville, Maryland