# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAMON ELLIOTT,

     Plaintiff,

       v.                                                    Civil Action No.  06-0240 (JDB)

UNITED STATES DEPARTMENT OF
AGRICULTURE,

     Defendant.

## MEMORANDUM OPINION

     This matter is before the Court on defendant's renewed motion for summary judgment.

For the reasons set forth below, the motion will be granted.

## I.  BACKGROUND

     Plaintiff submitted a request to the United States Department of Agriculture ("USDA")

under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for blueprints for all buildings

within the USDA's Beltsville Agricultural Research Center ("BARC") and, specifically, the

blueprints for Building 022, a residence within BARC.  Compl. at 1; *see* Memorandum of Points

and Authorities in Support of the United States Department of Agriculture's Motion for

Summary Judgment ("Def.'s Mot."), Declaration of Stacia M. Hutchinson ¶¶ 3, 10, 12 & Ex. A.

The Court previously concluded that the USDA's search for responsive records was adequate.

*Elliott v. United States Dep't of Agriculture*, No. 06-0240 (JDB), 2007 WL 1302588, at *4

(D.D.C. May 2, 2007).  The USDA's renewed motion for summary judgment addresses the only

remaining issue for resolution: whether the USDA's decision to withhold the requested blueprints in full under FOIA Exemption 2 is justified.[1]

## II.  DISCUSSION

Exemption 2 protects material that is "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).[2]  Such protection is afforded only to materials that meet two criteria.  First, the material must be "used for predominantly internal purposes." *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051, 1074 (D.C. Cir. 1981) (en banc).  Second, the agency must show either that "disclosure [of the material] may risk circumvention of agency regulation," or that "the material relates to trivial administrative matters of no genuine public interest."  *Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990) (citations omitted).

There is no dispute that the blueprints for buildings at BARC are agency records maintained by the Engineering and Construction Branch of the USDA's Agricultural Research Service.  Memorandum of Points and Authorities in Support of the Department of Agriculture's Renewed Motion for Summary Judgment ("Def.'s Renewed Mot."), Third Declaration of Arlin Taylor ("Taylor Decl. III") ¶¶ 1-2; January 17, 2007 Notice of Filing, First Declaration of Arlin

---

[1]    Plaintiff's opposition neither addresses the merits of the USDA's motion nor rebuts the presumption of good faith accorded to its supporting declarations.  *See generally* Plaintiff['s] Reply to Defendant['s]  Renewed Motion for Summary Judgment.  On this basis alone, the Court may grant the USDA's motion as conceded.  *See* LCvR 7(b); *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997) (treating plaintiff's summary judgment motion as conceded because defendant failed to file timely opposition.

[2]    The phrase "personnel rules and practices" includes not only "minor employment matters" but also "other rules and practices governing agency personnel.  *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051, 1056 (D.C. Cir. 1981) (en banc).

Taylor ¶ 3.  Nor is there any dispute that the blueprints are used for predominantly internal purposes.

The Engineering and Construction Branch, for example, uses the blueprints "for guidance in structural, mechanical, plumbing, and electrical work at BARC."  Taylor Decl. III ¶ 3.  The blueprints show the locations of foundation, framing and structural supports, air handling units, sheet metal ducts, supply pipes for water, gas and steam, sewer lines, and electrical circuits.  *Id.*  In addition, USDA staff outside the Engineering and Construction Branch use the blueprints for planning office space.  *Id.* ¶ 4.

BARC's Real Property Section staff rely on the blueprints "to add room number, room description and square footage information . . . for buildings that have been newly constructed, gut/rebuilt or renovated; when coordinating laboratory and office moves, [and] to resolve discrepancies or identify a particular space" where, for example, a laboratory's internal room numbering system is inconsistent with the room numbers on the drawings.  Def.'s Renewed Mot., Second Declaration of Lisa Bynum ("Bynum Decl. II") ¶ 3.  Information Technology Section staff refer to the blueprints in order to determine where telephone lines are routed and where new jacks are to be installed.  *Id.*  Physical Security Office personnel use the blueprints "for the purposes of security assessment upgrades."  *Id.*  Greenhouse Committee staff post building drawings on a staff-only intranet website "to aid in identifying the user, contact information, and watering responsibility."  *Id.*  When programs are consolidated or changed, management staff refer to the drawings to plan office and laboratory relocation.  *Id.*  In a few instances the blueprints are shared with persons outside the USDA.  For example, certain drawings are archived with the Maryland Historical Trust as part of the Maryland Inventory of Historic Properties.  *Id.*

The USDA asserts that disclosure of the blueprints may risk circumvention of agency regulations or statutes.  More specifically, such disclosure "would render BARC vulnerable to potential threats and unnecessary risk in maintaining physical security over the research programs and critical infrastructure assets at BARC."  Def.'s Renewed Mot., Third Declaration of Daniel L. Thessen ("Thessen Decl. III") ¶ 3.  Miles of state and county roads within BARC's 6,800 acres of land, which is not surrounded by a continuous fence, provide "literally hundreds of perimeter ingress points that could be utilized by a potential hostile intruder to access sensitive areas or structures within BARC."  *Id.*

There are "security-sensitive assets at BARC [which] require continuous security protection pursuant to government regulations or directives."  Thessen Decl. III ¶ 4.  These assets are scattered throughout BARC buildings and fields and their locations must remain confidential in order to protect them as required by federal policies, statutes and regulations.  *See id.* ¶¶ 11-13.

There are research projects at BARC involving "Select Agents," biological agents and toxins which must be handled, secured, packaged and shipped in accordance with regulations promulgated by the Public Health Service and the USDA in order to "protect against [their use] in domestic or international terrorism or for any criminal intent or purpose."  Thessen Decl. III ¶ 4.  These materials include "pathogens or toxins that, in the wrong hands, could be destructive to the natural environment and to the public health, the local or national economy, and potentially could be used for biological terrorism."  *Id.*  Disclosure of blueprints of BARC buildings "possibly coupled with other sensitive information such as knowledge of a reasonably specific location of a Select Agent," could assist an intruder in stealing or releasing these materials "with greater likelihood of success[,] and protection of these agents would be much more difficult."

*Id.* Without a perimeter fence, an intruder could have "free access right to the outer walls of a building that may contain regulated pathogens or critical infrastructure requiring special security measures." *Id.*

On BARC property are wastewater treatment plants, water distribution stations and power transfer stations. Thessen Decl. III ¶ 4. Pursuant to national policy set forth in Homeland Security Presidential Directive/HSPD-7, these facilities are considered critical infrastructure warranting continuous physical security protection. *Id.* Disclosure of the blueprints could enable an intruder "with sensitive information such as knowledge of a reasonably specific location of this critical infrastructure [and] unrestricted public access to BARC on the majority of the property [to] commit criminal acts against this critical infrastructure with a greater likelihood of success." *Id.*

National policy "to defend the agriculture and food system against terrorist attacks, major disasters, and other emergencies" is set forth in Homeland Security Presidential Directive/HSPD-9. Thessen Decl. III ¶ 5. Research information at BARC regarding protection of the nation's food supply "could be stolen by potential intruders [who] would have a much greater chance of success if they had access to building blueprints, or had access to building blueprints along with other sensitive facilities information." *Id.*

There are research programs at BARC on narcotics, including cannabis and the coca plant, authorized by the Drug Enforcement Administration ("DEA"). Thessen Decl. III ¶ 6. DEA regulations "set out a protective strategy for controlled substances, including narcotics" which could be compromised if intruders had blueprints of the buildings where narcotics are kept or learned where the cannabis crop is grown outdoors. *Id.*

Certain BARC buildings located in research fields store "chemicals licensed and registered under the Federal Insecticide, Fungicide, and Rodenticide Act[,] the Resource Conservation and Recovery Act[,] and the Occupational Safety and Health Act." Thessen Decl. III ¶ 7. These chemicals are used in research for controlling weeds and pests, and their storage locations are indicated on signs on the buildings. *Id.* A potential intruder with access to BARC and in possession of building blueprints "would have a much greater chance of successful or illicit activity," *id.*, which might include the theft of the chemicals or their release into the environment. Def.'s Mot., [First] Declaration of Daniel L. Thessen ¶ 5.

There is "a low-level irradiator used in animal research" at BARC which now is "subject to increased security controls promulgated by Nuclear Regulatory Commission regulations." Thessen Decl. III ¶ 8. Its physical security "is a high national priority because the radioisotopes in this irradiator could be used as radiological agents for terrorism." *Id.* Security would be compromised if the blueprints were disclosed and fell into the hands of an intruder who also had "access to other sensitive facilities information, such as knowledge of the reasonably specific location of the irradiator" as well as access to BARC property. *Id.*

Lastly, there are "computer network server and router locations throughout BARC" which store "information relative to Select Agents, critical infrastructure, narcotics research, and other security sensitive research information and data." Thessen Decl. III ¶ 9. Disclosure of the blueprints could compromise the security of this computer equipment, particularly because "the location of computer and telecommunications rooms [] appear" on the requested blueprints. *Id.*

USDA asserts that no reasonably segregable information can be disclosed. In its view, release of any portion of the requested blueprints "to any outside party ultimately will pose a security risk to BARC and [the Agricultural Research Service]." Def.'s Mot., Supplemental

Declaration of Daniel L. Thessen ¶ 3.  "[R]elease of any portions of these blueprints . . . would provide a hostile potential intruder with information that will make clear to [him] that potential targets, such as dangerous biological agents and critical infrastructure, are in buildings whose blueprints were not released, and so will allow [him] to identify a more focused target for illicit activity."  *Id.*

The Court concludes that the USDA's decision to withhold in full the requested blueprints is warranted under FOIA Exemption 2.  The blueprints are agency records used for predominantly internal purposes and their disclosure may risk circumvention of federal policies, statutes, or regulations.  *See Schwaner*, 898 F.2d at 794; *Crooker*, 670 F.2d at 1074.  Moreover, no reasonably segregable portion of the blueprints may be released to plaintiff.  Hence, the blueprints are exempt from disclosure.

## III.   CONCLUSION

Accordingly, the USDA's renewed motion for summary judgment will be granted.  An Order consistent with this Memorandum Opinion is issued separately.

                                            _____/s/_____
                                            JOHN D. BATES
                                            United States District Judge

Date:  October 30, 2007